The next case on the argument calendar is SSL Americas v. Medy Company. I feel like I've just watched Entourage. Yeah. Good morning, Your Honors. May it please the Court, Michael Kryan of Aaron Fox for SSL Americas, the plaintiff below and the appellant in this court. The defendant, Mizuho Medy, sent its CEO and its manager of overseas business operations and two technical supervisors into the state of California for more than 100 days during the short period of time that this product was being developed. They negligently supervised the operations, the manufacture of this product, which is called the Confirm Clearly Pregnancy Test. They promised to oversee the problem resolution process, and then they negligently failed to perform, and they breached that written promise on their own letterhead. And during this same time period, they acted behind SSL's back to obtain priority over the very assets at issue in this lawsuit. Now, that particular thing, that probably can be sorted out in the bankruptcy proceedings. Isn't that right? Yes, but not as to the unjust enrichment claim that SSL has against Medy, against this defendant here, Your Honor, because the bankruptcy court would not have jurisdiction to adjudicate the unjust enrichment claim that SSL has against Medy, the Japanese company. But there are various aspects to unjust enrichment, and to the degree that you're saying that there's been wrongful manipulation so that they get an undeserved priority or access to property via liam's, that seems to me can be sorted out. Now, whether there's unjust enrichment from other sources, that's a different question. But in terms of getting liam's improperly, that sounds to me as though that's going to get sorted out in the bankruptcy. That's only sorted out in the bankruptcy, Your Honor, as to the debtor's assets and the creditors of the debtor. A bankruptcy court does not have jurisdiction. The objection to what they did was getting what you said was superior position with regard to those assets. Yes. It's the same thing. Well, Your Honor, it is in the sense that the bankruptcy court would adjudicate the claims vis-a-vis the bankruptcy estate, but it's not in terms of SSL itself. SSL was the one. We're simply responding to the last thing you were telling us, which is trying to point to activities by the defendant in this country in connection with obtaining a superior position as a creditor, all of which seems to me to be in front of the bankruptcy court. To the extent that that speaks to a potential claim you have against the defendant for its activities with regard to your client, what they do with regard to the creditor's standing seems to be irrelevant. I see your point, Your Honor. And even with Your Honor's point that it would be sorted out in the bankruptcy court, that is still METI coming into the State of California and exercising control over assets in Poway, California. It's not a situation of a company sitting over in Japan, for example, only making a tire valve piece and providing that piece only to Japanese and Taiwanese companies and their only connection to California as well. They reasonably could foresee that the product would be distributed worldwide. That's not your situation. This is also not a tort claim. This is a contract claim. You decided who to enter into a contract with. You had your opportunity to negotiate with and try to obtain the participation of the parent company. That's not how the contract turned out. Why should we upset the arrangements made by the parties themselves? Your Honor is correct about the contract claim. But Mizuho METI put its promise in writing on its own letterhead. And that's in the record. What promise are you talking about? That's a letter from the CEO of METI to SSL. Who says, I'm going to try and sort these things out? Yes, Your Honor. And you're saying that that's a contract? Yes, because it's signed by the party to be charged. Moreover, it's negligent. But it depends on what's promised. It may or may not be a contract. Well, Your Honor is pointing to whether or not it's a contract chargeable against METI. And here it is, because METI promised to come into California and oversee the problem resolution. Then they sent technical personnel, operating personnel, Your Honor, and they sent their manager of overseas business operations into California to oversee that manufacture. Okay, here's my problem. I won't say with your case. I'll say my problem with the case in general, the analytic difficulty I've got here. Ordinarily, when you're talking about long-arm jurisdiction, and California, of course, goes to the extent of due process, you've got somebody outside the state who does things that have some consequences within the state. They ship goods pursuant to a contract, but they don't have any salespeople here or whatever. Or they ship something that explodes in this state, and on and on and on. This one's a tricky case, and it doesn't fit easily within the paradigm cases that I've got in my head, because your clear principal defendant is, of course, MUSA. How do I pronounce that one? MUSA, Your Honor. MUSA, okay. So obviously your principal defendant is MUSA. They're bankrupt, so you'd prefer to have somebody else with some deeper pockets. I fully understand that. So you're trying to figure out what causes of action you have against the parent. And the parent clearly has engaged in a lot of activities in California. I mean, you detail them. There they are, and there's really not a lot of dispute as to how much time they spent. The question is, for specific jurisdiction, what's the relationship between those activities and the causes of action that you assert? And I'm having trouble seeing how those activities give rise to the causes of action that you're asserting. There's my problem, and I can't tell whether I've got a jurisdictional problem or whether I've got a substantive law problem. Well, they would both be problems for me at some stage of the litigation. So let me take both of them on. And let's focus on the tort claim, the negligence cause of action. Where do we have a case? Explain to me what the negligence. I mean, I saw it. It's Claim 6. But explain to me the theory of that negligence. I mean, how does Medi in Japan owe a tort duty of non-negligence to your client? Based on their promise and their entry into the participation of the overseeing, the supervision of the production of that product. Yes, the contract was with MUSA. Your Honor's absolutely right. But where do you have a case where the parent sent personnel, operating personnel, to supervise production for more than 100 days of the very product at issue? It's this product. And the product carried with it Medi, not MUSA, Medi's patented technology. So what you have here is MUSA, the California subsidiary, was actually just a marketing conduit through which Medi marketed its patented technology to SSL, an American company. That production was in the state of California. It was performed negligently. Who supervised that production? The CEO came to California. The manager of overseas business operations personally traveled to California. Your client bought and paid for the product from MUSA. Your Honor's absolutely right. I have real difficulty understanding this as a negligence action. Your Honor, let's take a step back. Let's just look at what jurisdictional facts we should be looking at. Take the Best Foods case. In that case, the Supreme Court had a foreign parent company director making one plant visit for one day to the state of Michigan. And the Supreme Court remanded to the district court to find out whether that person participated in operations. Because if the parent company operating personnel participate in operations, they expose the parent company to jurisdiction in the form where they sent employees. Here, we don't just have overseeing. For example, a parent company receiving a quarterly report. We have the Medi personnel traveling outside Japan, directly into California, to supervise production, Your Honor, to negligently supervise according to our claim. And that's what Your Honor is saying. Well, how do we know that they were negligent? Maybe they weren't. Maybe we will lose at trial. Well, and not only how do we know that they were negligent, even on the assumption that they were negligent, how do we know that they had a duty toward your client not to be negligent? Maybe it was a duty merely to their sub. But that's a substantive law question, Your Honor, that goes to the merits. We should not be saying that the courthouse door is closed in California where the parent company is an operating company. This isn't a holding company case like the Wärtsilä Shipbuilding case where they're over in Finland or the AT&T case where Russell's Lambert is over in Belgium. I mean, that's really no connection to California. This company sent up – it was an operating company. First of all, it's an important distinction. But it sent its operating personnel, supervisors, into California. Where is their evidence that those supervisors performed adequately? The product never worked. Their patented technology never worked. They negotiated. And Moussa may have a cause of action against them for that. And in that cause of action, the presence of the operating employees from the Japan company in California may give rise for Moussa to have a basis for long-arm jurisdiction over Meddy in California. But your claim is a different one. And the question that Judge Fletcher posed, I think, remains on the table. What's the connection between your claim, which you're desperately trying to restyle as an negligence action, and I just don't see it, your claim and the Japanese company and its activities in California? Your Honor, let's look at the conduct of the Meddy executives with my claim, with SSL, not just with Moussa. Meddy sent its CEO into California to negotiate directly with SSL. Not with the sub. Not a parent subsidiary supply agreement, although that existed. Counsel, I think the thrust of the question that's been put to you is one that helps to distinguish between general jurisdiction, where they're over here so much you can sue them on any theory, even something that happened in Finland, and special jurisdiction that is key to what they specifically did in the country. And the question is, how did anything Meddy did make you worse off than you would have been with Moussa alone? Your Honor, they negligently supervised the manufacturer of the test. They promised us that they would step into that factory and solve the problem. And do you know what they did? They didn't solve the problem. They didn't fix it. How did you change your position based on anything they said? We could have charged in there, Your Honor, and enforced our own liens. And that's why we're talking about claims being sorted out in the bankruptcy case. But we also have an unjust enrichment claim, because while we relied upon them to supervise the production, they were securing their own interests in the assets located in California. So if I understand you correctly, you're arguing that this pregnancy test was manufactured by Moussa using Meddy technology, and then sold to SSL, and SSL sold to the third parties. The third parties are complaining it doesn't work, and coming back against SSL. SSL has some kind of indemnity claim against Moussa that they can't enforce because Moussa's bankrupt. And you want to assert, essentially, that indemnity claim back over against Meddy. And how are you worse off because of anything Meddy did? Are you saying that that somehow defeats your otherwise viable indemnity claim against Moussa? Yes, Your Honor. Our claims against Meddy are based on Meddy's own conduct in California that was undertaken vis-à-vis SSL. So Your Honor's absolutely right. They were a parent company, but they were also an operating company, and there were claims between the two companies. But that doesn't mean that SSL cannot enforce its rights, where Meddy gave approval to enter into this very contracted issue, and we have that in the record for you at page 143, where Meddy oversaw negligently, oversaw the production of this product, negligently oversaw the problem resolution process, and then exercised control over assets that we could have enforced against prior to the bankruptcy. And we haven't even talked about the fact that they left that sub undercapitalized and that that subsidiary was actually its alter ego and agent for the sale of that product. But we're getting into general jurisdiction. And I think the specific jurisdictional facts, where do you have a case where the parent company from Japan or some foreign country sent operating personnel for 100 days into a forum, negligently oversaw, they were the supervisors of that production. And when the American company tries to sue them, they say, well, no, they stayed over in Tosu City, Japan. Let me ask you this. In argument here this morning, you're talking about the letter from Meddy, CEO, that basically says, I'm paraphrasing. Listen, we'll try to make this right. And you're characterizing that as a contract. Yes, Your Honor. And you're saying that you're suing, among other things, for breach of that contract? For breach of that, as well as negligence. I'm reading the complaint, and there is a claim, the first claim is breach of contract. But there's no mention of that. The only breach of contract is breach of the, quote, agreement. And it's very clear from the complaint that the agreement that's referred to in claim one is the agreement between Moussa and your client, rather than any agreement that comes out of that letter. Your Honor, I see that my time has expired. May I answer your question? You certainly may. Your Honor, Your Honor is pointing to a substantive law point that will be taken up in this action. No, no, I'm not. That's also true. But for purposes of jurisdiction, I'm trying to figure out what are the contexts that you point to, and how are they connected to the claims that you're bringing? Well, one of the claims that you're not bringing, at least as I read the complaint, is a breach of contract based upon this letter. You're claiming breach of contract of the underlying agreement between Moussa and your client. Your Honor makes an excellent point. The complaint was filed at the beginning of the lawsuit. It was never amended. And then there was a motion to dismiss. And that's what we're dealing with here. So I think, Your Honor, is correct that the complaint does need to reflect all of the communications and promises that were exchanged between the two corporations. Am I supposed to give you jurisdiction based on a complaint not yet filed? No, Your Honor. Based on Meddy's own conduct within California. Counsel, again, focusing only on special jurisdiction. Clearly, California recognizes all kinds of tort theories for misrepresentation and so on, and doesn't apply the common law rule that you have to have special duty relationships where the only damages are financial. California is very broad on that. But it's possible to read the only complaint you ever filed as proceeding on the theory that we have been injured by Moussa in a variety of ways. And at the time Moussa injured us, they were the agent for Meddy. So that all of the injury is traceable to the acts of Moussa. And the only way to get Meddy in is to claim they're an alter ego or something like or a principal. And that's not a very strong argument. Now, you're arguing now, no, we have independent contract claims and independent tort claims. But we never include them in our complaint. And the court is supposed to kind of reverse a decision of the district court on a theory never argued to the district court and then send it back so you can amend your complaint. I mean, it doesn't make any sense. Your Honor, I do understand what you're saying. But let's be clear. The letter that I'm referring to and the e-mail where Meddy gave approval to enter into the contract and the admissions that we elicited about the trips and the admissions that we elicited about the purposes of those trips and the supervision of the production, those were all in the record before the district court, Your Honor. But not in the complaint. Your Honor is correct that the complaint which was filed at the very outset of the case focused on the product, the confirmed clearly product, and what went wrong with it. Discovery occurred. It was jurisdictional discovery only. And we obtained further information about Meddy's very close involvement in the production. Did you seek leave of the court to amend your complaint to bring independent claims against Meddy? We alternatively sought that leave, Your Honor. Oh, you did. So there's a motion in the record, if I go back and look, that you sought leave to amend the complaint. I believe that was included within the opposition. I will check the record even while we're still here, Your Honor. Let's hear from the other side, and we'll give you a chance to respond. And if it is in the ERs, I've got them sitting right here in front of me. Thank you, Your Honor. May it please the Court, Craig Nicholas on behalf of Mizzouho Meddy. To address the Court's points that it raised with the appellant, these arguments that I've heard today from SSL are new arguments. It's a recasting of the complaint, not the complaint which we contested at the district court below. And it's my position that these arguments the Court have heard today from SSL have essentially been waived, because what the complaint really is at its crux is a breach of contract claim against Moussa, and then styled as Mizzouho as the defendant based upon doctrines of either alter ego, representative services, or agency. It's only now for the first time several years later here at the Court of Appeal that I'm hearing that a letter that was sent from Mizzouho to SSL to try and resolve the issues after the claim had already been given rise between SSL and Moussa. I guess we're about to find out, but what's your view? Was there any motion made by the plaintiffs to seek to amend the complaint? I certainly don't believe that's the case. I know for a fact it wasn't argued when we argued the motion to dismiss, and I do not believe there was any request to amend the complaint. There was no contention by SSL that they had different allegations before the district court other than what they had already alleged. We litigated the case that we had and the complaint that we had, and we are where we are in the case. Now, assuming that SSL wants to pursue a suit against your client, is there an available forum for that lawsuit? There is. What forum is that? Japan. And what's the Japanese court going to do when all of the operative things that they're complaining about happen in California? The Japanese court, first of all, set forth in the declaration of Mr. Hiroto Noda, is that Mizuha will accept jurisdiction and accept service of process in Japan, and I believe the Japanese court would welcome and embrace jurisdiction for this point here. This is a Japanese company. Obviously, I don't know what Japanese courts do with respect to foreign nonconvenience, but if I'm an American court and it's all flipped, and that suit's brought here, but everything's flipped so that the question is whether the suit should be, you can waive whatever you want, but I'm probably going to dismiss you on foreign nonconvenience. In California? Yeah. I'm going to send you back to Japan. But I have to say, I don't know what the Japanese law is on foreign nonconvenience. And the district court never had an opportunity to address foreign nonconvenience because it didn't reach that issue here. But what I'm trying to figure out, is there any forum in which this plaintiff can sue your client based upon these or related causes of action? They may be lousy causes of action on the merits, but I'm trying to figure out is there any place where they can bring this lawsuit? Well, I hope I'm answering the judge's question when I say that Japan is that forum. We've said we will accept service of process there. The documents, all that I've said is so Japan is going to take a lawsuit based on events that largely took place in California, substantive law being the law of Georgia, and so we're going to go forward and sue Japan based on that. Because Japan has an interest in protecting and analyzing the interests and rights of its corporation. Mizuho is a Japanese corporation. Keep in mind here, California, in one way or another, doesn't have a dog in this fight. There's no California real property interest at stake. There's no California consumers that have been injured. The plaintiff is a New Jersey company doing business in Georgia. California, this is a foreign shop into California. SSL is on a plane anyway from Georgia, whether they're in California or whether they're on their way to Japan. They're traveling in any respect. And it's set forth in Mr. Mizuho's case. Sotomayor, did SSL market any of the product that it obtained from Muzo in California, to your knowledge? That's not in the record. We know that the product was marketed, but it's not in the record, in the appellate record, where that was marketed. But there's no indication of any California consumers being injured or complaining. It's just not an issue. California has an extremely low interest in this lawsuit vis-à-vis Japan, which has an interest in protecting the rights of its corporation. And there's U.S. Supreme Court case law to the effect that special consideration need be given when a parent company ---- Are you referring to the Asahi case? I am. That case is very different from this one, obviously. It is, but I think the Court's point there that special consideration needs to be given to a foreign parent corporation with respect to the impact of those foreign laws. I think this case is an example of that. For example, SSL wanted to take the deposition of Mr. Noda. Well, under Japanese law, that's not a signatory to the Hague Convention, that created issues and concerns with respect to how American discovery laws interact with Japanese laws with respect to whether there should be discovery in that respect. So I do believe that had the district court looked at the form of nonconvenience issue, that it would have found that this case properly belongs in Japan, because there's no California party here, no California property rights, no California consumers that are injured. That's where the case really belongs. So you're telling me you're not a district judge in rule on this, but you're saying that if the district court had found jurisdiction, it would dismiss on form of nonconvenience? I am. Under California law? Yes. Well, we don't have that in front of us, but I doubt that that's right. I mean, that's not ---- And I think I'm fairly familiar with California nonform of nonconvenience law. They tend to hold on to cases like grim death. And my feeling there, Your Honor, is the vast majority of those cases, there's actually a California party or product or consumer that's at issue. Well, you see, what we have here is a corporation that has a manufacturing facility here in California. Lots of contacts. Lots of things went on here in California. They did go on here. Its subsidiary had a facility here. Mizuho itself never had any office here, et cetera. I understand that. But if we're predicting the form of nonconvenience resolution, I'm not anywhere near as confident as you are that the district court would have sent it to Japan. Okay. Your Honor's point is well taken. And if the Court did reverse it, I would respectfully request that the district court be allowed to rule on that issue, of course. I'm not speaking for my colleagues, but for myself, I would not tell the district judge how to rule on a form of nonconvenience resolution. I understood. Until after he's ruled on it, and then you might tell him. Absolutely. The district judge goes first. That's the rule. But to that point, Your Honor, that the district judge goes first, here the district judge went first on an argument of a breach of a contract which is the supply agreement, not some newly crafted agreement which is a letter sent to SSL. Mizuho is the contract actually at issue in the complaint, the supply agreement. Mizuho is not a party to that agreement. And here's my problem. It's the same problem I addressed to your adversary, which is it's a problem, I won't say with your case, it's a problem with the case. Your client had lots of contacts with California. And they are in some fashion related to precisely this dispute. And I'm having trouble sorting out the question of jurisdiction from the question of whether or not this is a good lawsuit. Frankly, it looks to me like a lousy lawsuit on the merits. But I'm having trouble figuring out why it gets dismissed on jurisdictional grounds when your client has had so many contacts with California that are in some fashion related to the lawsuit. Well, my client has had contacts with California, no doubt about that. I don't disagree with that. But the Ninth Circuit recently issued a case, the Beaumont case, August 28, 2009, where the contracts were far, far more significant than Mizuho's contacts here. And when we look at the Beaumont case, that's a Dahmer Chrysler case where the cars are manufactured in Germany and sent out to California where 45 percent of Dahmer Chrysler's revenue is derived from the U.S. market. The Dahmer Chrysler. Don't put too much weight on that one. That one may go on bonk. Well, it is where it is right now, and I do think it was properly decided. And I do think it may well be. But don't bet all your money on that one, okay? But I don't have to, Your Honor, because I have the Kramer Motors decision. And I have the Doe Unocal case. And I have the AT&T case. And when you look at that line of cases, what it says is that a parent company has the right to monitor and interact and interface as it properly should, obtain reports, advise its subsidiary, and even at times object to its subsidiary's proposals from time to time. None of that is wrongful here. The SSL seems to have a problem with the fact that Mizuho was involved. But involved is not the test. When you look at Beaumont or the earlier case law, the test is whether there is pervasive and continual control that is beyond. That's the general jurisdiction test. That's not the specific jurisdiction test. Well, I believe Beaumont articulated that test in the context of agency and whether you can establish agency as well. And in that context, they have to show pervasive and continual control. But agency is not their only theory. It isn't. It isn't. But when you look at the context that SSL has talked about here today, it's very important that I think SSL is a bit off on its timeline here, is bored of the timeline here. I mean, the dispute between SSL and Moosa had already arisen. There were issues with the product. It was being recalled. SSL comes to Mizuho and says, can you offer some advice to your subsidiary to try to get these problems resolved? And Mizuho says fine. They come in. They offer technical advice and support. All of the cases. But of course they've been involved earlier on. It is true, I think, that Mizuho had approved the contract between Moosa and SSL. Indeed, they did. They're involved very early on in the relationship between Moosa and the plaintiff. No question. But approval of contracts, whether you take the AT&T case, the Doe Unical case, the Kramer Motors case, approval of contracts is ordinary between a parent company and a subsidiary. That's true. I'm trying to figure out whether we're talking you win on the merits or whether you win now on jurisdiction. I think we win now on jurisdiction because what we don't have is a submission by SSL that the conduct of Mizuho, the advice given after the fact to try and correct the problems, was the cause of their damage. Because Mizuho's involvement in trying to fix those problems, the claim arose in spite of those efforts to resolve those issues, not because of those efforts to resolve those issues. What if, and I guess what I'm about to find out, and I don't know as I sit here, what if there was an attempt to amend the complaint and to charge breach of contract, the contract alleged being the letter saying we're going to try and fix this? That's not necessarily how I read that letter, by the way. But what if that's the complaint? What if that now is in the complaint? All right. Presuming that that's procedurally proper to do it at this late stage. I'm not asking for a concession on that. The letter itself is interesting, Your Honor, because in about the third or fourth paragraph of that letter, it reflects that Mizuho was asked to provide a guarantee of performance here. And Mizuho's ---- That goes to my point, Your Honor. I'm not saying that I read that as establishing a contract. But what if there is a claim that treats it as a contract? Is that enough for jurisdiction to decide whether it is a contract? I don't believe it is, Your Honor, because there's ---- It was? Yes. Well, because there's a case law to the effect that entering into a contract in California, right at California property, is not enough to establish jurisdiction. You need more of that. No. I don't think that's right. If somebody enters into a contract to do something in California, that's enough for jurisdiction to sue on the contract. Well, the reason why, if presuming it's hypothetical that the complaint was a complaint about the letter from Mizuho to SSL was actually the complaint at issue, but here we don't have that document, that complaint. There's no ---- Mizuho, there's no consideration for that document. Mizuho is not getting any compensation. But you're arguing the merits as to whether or not it's a contract. Well, I think that's true. I'm skeptical, frankly, whether it is a contract. And I just, Your Honor, I don't think we get there because the district court didn't rule on that. That's not the case we have before us here today. Well, I guess we're about to find out. Meaning if there was a motion to amend the complaint, that may bring that into play. I don't believe there was, and we'll hear from SSL's counsel soon. Yes. And with respect to the intercreditor agreement, which is something that was brought to the Court's attention, that document is not a purposeful availment by ---- Which document? Yes, this is the intercreditor agreement. This is the lien priority document that was signed by Mizuho with respect to the priority of claims. And with respect to that document, Your Honor, that's a retreat by Mizuho. What that document is, that's not a financing agreement. That's Mizuho saying to FCC, not SSL, that FCC, you are factoring these invoices from MUSA, and we will step back and we will give you priority with respect to collection on the revenue generated by MUSA. So that's not a purposeful availment. That document is a retreat. And that document does not give rise to jurisdiction in California. That document does not have a California dispute resolution clause. It seems to me that your argument is the weakest based on the complaint that we have in front of us with respect to the negligence claim. It may well be that on the merits there was no duty owed by your client to SSL to avoid negligence. But the complaint says, beginning in and around March 2005, defendants ---- now defendants are your client, but it's a whole bunch of does ---- owed SSL a duty to use reasonable care diligence with respect to the manufacturing of the product. SSL was informed to believe thereof. Defendants breached the duty of care owed to SSL through poor manufacturing and inadequate quality control. Should have known that conduct as alleged would result in harm, fell below the reasonable standard of care imposed upon said defendants, resulting in harm. Now, again, that claim may fail on the merits. But I'm not sure that that depends upon whether or not there's a contract between your client and SSL. And your client did a lot of things with respect to this process. It's their patent. They're supervising to some degree the manufacturing process. When things go wrong, they say we'll try to make it right. Why is that not enough to sustain a negligence claim against your client? Because that negligence claim, I think SSL is now reading it too broadly. Well, I'm reading it, and I just read you the words. I'm not sure how they read it. Okay. That negligence claim dealt with the manufacturing process, as Your Honor just said. May I finish? I see my time has expired. No, please do. Okay. Because the testimony, which is unrefuted, is that the core manufacturing of this product was done by Moussa, not Mizzouho, that Mizzouho was providing technical advice, not manufacturing this product. The core of the product is not the manufacturing of this product. Well, but the allegation is that your client owed a duty of care and supervision with respect to the manufacturing process, and your client is involved in the manufacturing process. It may be that, in fact, under California law, your client owed no duty to SSL, but that's a claim on the merits. It is a claim on the merits, Your Honor, but when we talk about duties and where the duties arise, those are defined by the contracts, and that's why this is really a contract case. Well, I'm not sure. There are lots of duties that arise independently of contract. And maybe this could be characterized as a product liability claim brought by someone who is not the ultimate consumer of the claim, but someone who is the marketer of the claim. And I believe that is an overly broad interpretation of the contract. I'm sorry, an overly broad interpretation of the complaint as we have before us here today, because the complaint really is about the negligent manufacturer of the product, which was the purview of Moosa and not Mizuho. Well, but that's what you say. Right. Well, it's more than what I say, actually, Your Honor. I think that's the undisputed evidence because that's the declaration of Mr. Benzin and Mr. Hortenota. Well, it's the purview of your client in the sense of how they seem to have allocated the responsibility between your client and Moosa. On the other hand, their claim is a good claim or a bad claim that your client owed a duty of care with respect to your client. And maybe they did it by, I mean, if they never touched the manufacturing process, maybe they had no duty of care. But maybe their argument is once they intercede into the manufacturing process, they are now implicated in doing it properly. I mean, I can imagine the claim. I can imagine the losing. Understood. And I think where this fits in, and not to the merits, but in the jurisdictional analysis, is what those contacts are about. And my argument there, Your Honor, and I'll submit on this, which is those efforts to fix these issues were an attempt to resolve a claim that had already arisen. I understand. I mean, that's the case. So that's how it fits into the jurisdictional analysis. Thank you. Thank you. Your Honor, there was not a formal motion to amend in the record at page 669. Hang on. Hang on. Slow, slow, slow down. It's the last volume. Oh, so you're looking at the complaint? Volume 4. I'm in the complaint. I'm at paragraph number 19 of the complaint. It's at page 669 at the very bottom of that page. And it does refer to the letter I was speaking of. So you're asking me to read Claim 1 even though it refers to a breach of, quote, agreement, and even though earlier in the complaint agreement is very specifically referred to or maybe even defined as the agreement between Moussa and your client, you're asking me to read agreement now to incorporate this breach in paragraph 19. Your Honor, it is correct that agreement is specifically defined. But the claim we're talking about, the breach of contract claim, Claim 1, also incorporates paragraph 19, among others, into paragraph 21, which is part of Claim 1. Is it precise? Could it be made more exact? Yes. But it is part of the complaint that was before the district court. And counsel was just telling you that they undertook activities in California, but they were only trying to help. They were only conducting activities after a problem arose. Well, that's not even the record. There was no record site given to you for that. Because the 100 days included before the problems arose, there was supervision throughout that time, and how that's not a negligence cause of action. For MEDI's personnel, operating personnel on the ground here in California, we haven't heard any record citations to dispute my evidence of personal jurisdiction. Thank you, Your Honor. Thank you very much. Nice arguments on both sides. Tricky case. I'm not sure I know anything more about how I'm going to come out than I did before I walked in. But that's not the lawyer's fault. Nice job by both lawyers.
judges: Singleton, Fletcher W. , Clifton